You can see we're missing one judge this morning. Judge Case is on the panel for today's docket, and she's unable to be here today. However, she will listen to the oral arguments on the Supreme Court's website and be a full participant in this panel. Okay? So the first case today is Enway v. Marriage of Myers, No. 5-15-0483. And Mr. Fahrenkamp, whenever you're ready, sir. Thank you. May peace be with you. When the trial court entered an order directing Ted Myers to pay $20,000 in his ex-wife's attorney fees, it entered an order that defied both math and logic, and that's why it's an abuse of discretion. It defied math because in order to grant this fee-shifting provision, the court first has to find that financial inability exists on the part of the wife who is the recipient of that loan. And in order to do that, a court would have to find that she was unable to pay. And it would strip her of her means of support and undermine her economic security and stability. And that's under the case of Sandler. Well, in this case, the wife's attorney fees were all but paid except, I think, for $1,957. And she had credit card debt, total credit card debt from all sources of $10,000, and stocks valued at $4,500. I'm sorry, she had debt of $11,288. But a checking account balance of $10,743, so it's very clear that she had money to finish paying the debt. Where the math comes in is that when the court would calculate the respective incomes of the parties and factor the actual money received, the wife actually was receiving more money per month than the husband. And that's because when you apply the child support he was paying, there's a differential of it. So the swing was from of an $1,838 on swing, which means after child support is considered, the wife was receiving $5,376 per month and the husband only $4,726 per month. Their attorney fees were substantially the same. And based on that criteria of financial inability to pay, this is where logic comes in. If the court finds that the wife is financially unable to pay her fees to the tune of $20,000, then it defies logic to say that the ex-husband, who now has less money per month than she does, would be able to pay it. So it's this upside-down of the fee-shifting provision that makes this decision of the $20,000 reward something that we believe is an abuse of discretion. And sometimes you have these cases where you look at it and say that the court had the ability to determine the credibility of the witnesses and said, this isn't one of those cases, this is a straight-up math case. Straight-up math and applying what the numbers were. And this doesn't even consider the fact that there was an additional retroactive application of support so that Ed Meier was going to have to pay another $250 a month to pay off, not a contempt arrearage, but a retroactive application of an increase of $12,000. So an additional $500 a month would come out of his income. That would make it even less likely to be able to pay what she has already paid. All she had left was a $1,900 balance. So the court, in assessing it, seemed to make a couple of comments. Among the comments at the end said, well, there were some unnecessary pleadings that may have been filed. That's not the criteria under 508. And there's a factual question as to whether or not she identified anything. Because if filing an unnecessary pleading means you had to file to ensure that your children be able to attend your wedding, I mean, that's how much this controverted this case was. If that's an unnecessary pleading, she didn't identify that. That's what he had to do. So throughout this case, each of them incurred about the same amount of fees. At the end of the case, the wife had the advantage, ex-wife had the advantage in income. And yet the court found her income was unable to pay the amount that she owed for attorney fees, which was only $1,900. Let me just ask a question about that, and I just don't remember. Had she borrowed money to pay part of the attorney's fees that she paid? The testimony, as I understand it, was that she put it on a credit card. That she put it on a credit card. But the credit card balance, her total credit card balance, was $11,288. So when you say she only owed $1,900, that's how much she still owed her attorney because she had incurred other debt to pay the attorney's fees. And that's probably what was leading up to the trial. It just hadn't been through the billing cycle. But even then, that amount of debt is exceeded by the award. The award was $20,000. The amount she was receiving was in excess of the ex-husband's income. So let's assume that she did borrow the money. She's not stripped of her means of support, doesn't undermine her economic stability. She banked, had $10,743 in the bank. So the question of whether or not her financial stability was undermined is easily answered. It's not. She had the money available to not only pay her outstanding attorney fees but pay off most of her credit card, not all of it, which puts her in a higher financial stability range than most people going through divorces. So in this case, finding that she was financially unable to do it, it would undermine her economic stability and not. And then, of course, finding that the husband, who had less money than she did per month, who had less disposable income per month, was able to is another basis. So the first is she did have financial stability to pay. She had the ability to pay. The second is you can't find that she had more money than he did, and yet he has the financial ability to pay that. All right. Thank you, Mr. Farrenkamp. Mr. Blood? Thank you, Your Honor. May it please the Court. For the audio record, my name is Curtis Blood. I represent the Apple Leaf Crystal Miners. And I'd like to read from one of this Court's decisions very briefly. It's a 2006 decision, in re marriage of Alexander. And this Court said, And how many times have you heard that? Pretty high standard. I think everybody agrees that that is the standard, abuse of discretion. If I was sitting over here, I'd hate that standard. If I was sitting over here, I'd love that standard. Of course. Everybody running the trial court at the Hill points out the standard for abuse. My favorite standard is that. It's one of them. Today. So, Mr. Blood, you have pointed out that he is remarried and his wife's income should be considered. In what way? I implied it. I know you implied it. In what way? Well, if you look at it, that's kind of where I'm going, Your Honor. Okay. So if I may develop into it a little bit. You may. She's basically at a much less income level than he is. I mean, it sits only two to one. It's almost double his income. Yes. In 2012, we've got that he earned $96,000 plus, that she earned $48,000 plus. $48,000 is half of $96,000. That's without considering your spouse. As I read the cases, the single most important factor regarding awards of attorney's fees is disparity of income. Case after case, this court has cited that consideration as the most important consideration.  The party that has to contribute to attorney's fees has much more significantly greater income than the party that needs the help. I cited six cases in page 12. I'll brief on that. Sometimes that's the only factor discussed. Frequently, it's always at least the greatest factor. And that, like I say, on page 12, six cases. Now, where I'm going with that is her financial statements is in the brief. It's in the appendix to appellant's brief, and it starts at page A49. But the part to which I want to direct this court's attention is A52 and 53. And that shows her bank and credit union accounts and her total liabilities. And if you look at that, those bank and credit union accounts, her cash is $12,000. You look at the next page, her liabilities, they total $11,000. This, my client, is literally living paycheck to paycheck. She's literally getting her paycheck. She's an English teacher, high school English teacher. She's literally, you know, they're not quite paid like Major League Baseball players yet. She's literally getting her paycheck and wondering if it's going to go far. Does her ex-husband live paycheck to paycheck? Well, we don't know. He certainly didn't make that showing to the trial court. He certainly didn't argue that he did. I mean, we just catch situations basically we do not know. But the one dire situation we do know about is my client. Now, fees, attorney's fees. My client's total attorney's fees was about $35,000, of which she had paid $33,000, leaving a balance of about $2,000. Justice Stewart, you inquired about this. In her financial statement that you saw in the appendix, it says that her liabilities are $11,000. But eight months later at trial, she testified that that credit card alone was up to $20,000. And she testified at, this was in the record at R239 and 246 and 247, that that $20,000 credit card balance was legal fees. Interesting. You know, it's an interesting coincidence that the $20,000, which is up there near half of her gross income for a year for the last full year in the evidence, that $20,000 is the exact number that the trial court awarded in contribution for fees. I mean, it's a very interesting leveling of the playing field. That's a very interesting new start for her. I mean, from then on, I mean, the case goes on. I mean, that's, she testified in 2013. Think about that. 2013, this is three years later. This court's going to have to move to get this thing decided before 2017. And that's, you know, this is old evidence. The last evidence we got is 2012. But in that much time, I mean, how much more are her attorneys? I mean, things haven't just settled. She's had to go on from there. I mean, I'm not included in that. Here I am today. And we did not bring this to the court. We just have to defend it. Well, of course, that's a different issue. And, of course, you can go back to the trial court and petition for the fees for this appeal. Absolutely. And we can come back up again and do it over and over. Absolutely right. I'm just thinking, though, that Justice Shetland, like you said, so what does the spouse's income have to do with it? I think it has to do with how dire are the straits. And the fact that someone has disposable income to bring an appeal to this court on the abuse of discretion standard kind of tells me that things aren't too tight. That at the other house, maybe there's a bit more cash. But we can tell, because the record tells us, that there's no joy in the crystal wheel anyway. Things are pretty darn poor. And even after this, even after this award that, of course, was made in 2014, she's a long way from rich. She's a long way from rich. So could you address the court's findings that numerous pleadings were filed and court appearances required that were not necessary and how that factors, you believe, factors into the court's award? Thank you, Your Honor. Of course, the court has been asked to clarify that on rehearing. And there was a motion for rehearing by the other side. It wasn't asked to clarify it. It would have been interesting to know. What will be in the record? Anything that will support this court's finding? Well, there was an order of protection. I refer to it as a fiasco, which it was, regarding the exchange of children at a police station. That didn't need to go to court. My client wanted to be the chaperone for the school trip, and that ended up in court. That didn't need to go to court. This sort of thing doesn't need to go to court. But that said, okay, there were unnecessary pleadings. I mean, those were certainly unnecessary. But at whom was the court pointing the finger? Which way did that cut? I'm unable to read anything into that. Sometimes judges say things that mean something, and sometimes they just ruminate. And that, I can presume that's rumination. Well, there's a little of this, there's a little of that. That's how much I think it should be. I can't cite anything to this court in the record that shows me any more than that that is rumination. Was the order of protection denied? The petition? It's a bit more complex than that. I'm not certain. I think it actually existed for a while. I mean, the reference is that it was dismissed. But I don't know at what point it was dismissed. Well, I did want to clarify one more time that the amount of debt is not $11,000. That's from my client's April 2013 financial statements. It's $20,000. That's her testimony under oath, not rebutted, in December 2013. It's $20,000. And I want that corrected when I heard it was not. That's it. I don't think there's any way that this was an abuse of discretion. I think there's a great many reasonable people in reasonable courts that would rule the way that this court did. And we ask the court to affirm the judgment. Thank you, Mr. Budd. Thank you. Mr. Farrenkamp, we've got him. Let me ask you a question right off the bat here. You equalized their income by including the switch in child support. Correct. Any of the cases that you cited in your brief, did the court do that? No. And did you find any cases where that was done? No, I did not. And for a couple of reasons. I think this is a dramatic example because the income, it doesn't go by what income you receive. It's by the total amount. And the standard is financial inability is defined as to strip her of her means of support and undermine her economic stability. If you look at her affidavits, she banks vacation trips and a lot of things. And there's no way of telling. Her affidavits under oath say this is how much her debt was. We have nothing to show what that additional credit card debt would have been for. But we do know she was able to bank an equivalent amount of money at the same time. So the standard, and it is a high standard, but we accept that. And it's not no standard. I mean, you know, it is part of the negative, but there is a point at which you say, you know what? And that's why we do have some cases that say it's inappropriate. And to the extent the judge or court considered more than mere rumination that this filing she disagreed with or thought was improper, it's really improper consideration of the filing. It is a financial-based decision. And it's a financial-based decision should they shift fees. And at the point at which they're asking, they want to speed past the point at which can she afford her own, which she can't. To say merely the existence of credit card debt means you can't afford your own. It ignores the economy of divorce, and I've been doing it for 38 years. And to say someone has a $10,000 or $20,000 credit card debt who takes trips regularly and also has other income, I mean, Justice Chapman made a point of saying should we consider the spouse's income. I think you should not. But if you do, you should consider both sides. She had a boyfriend who was living with her and paying her rent. Is there any case law that supports what you're saying that we should not consider? No. As a matter of fact, I think it's sort of in the vein from the rumination to the stage where I think that the direction is, if, for instance, my client lived with the ex-wife of Donald Trump, then she— Which one? The one who got the most money. The question is then to what extent does he have to contribute to his own support? If his debts are all alleviated, I think that that's a fair consideration. But that's not what the court did here. If he has no debt and he's able to fly and jet airplanes and stuff, then they say it will not deprive him of his means of financial support. But that's really not here. And if you do that, then you have to look at both sides because there is testimony that the ex-wife had her boyfriend paying her rent, and I didn't include any of that. Of course, that could end tomorrow, though, if it is a boyfriend. I do see a little more permanency in a marital situation. Well, Your Honor, I understand that, but I think the numbers would show almost otherwise, that divorces are at such a rapid rate that you can assume no more permanency in a marriage than you can in a living relationship. It's sad to say. But it is income in the household, and it was income in the household at the time. So I excluded all that in the calculations. And I did include the child support because that's dollars in and dollars out. But it's almost as though if we're only arguing or discussing whether it's equal, I think the point's missed. And I haven't done my job because I think she has the financial ability to pay. There's been no showing that she has a financial inability. And if she has, in fact, paid all those, and at the time I only went by and go by her affidavit and the fact that she couldn't show what those additional charges were in evidence on her credit card, that I assumed it was consistent with her past charges, which was for vacations and things. So at some point in which it does hit that line where it defies math to say she can't financially support and would undermine her economic stability, we'll have to say the same thing, that same number. Numbers are numbers. It affects the household. And for that reason, we believe that it was an abuse of discretion. Any other questions? Thank you very much, Mr. Kroenke. Thank you to both of you for your briefs and your arguments. This matter will be taken under advisement, and a written decision will be forthcoming.